UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Antwain Euron Hill, | No. 23-cv-1365 (KMM/JFD) |
| Petitioner, | |
| v. | **ORDER** |
| Warden King, | |
| Respondent. | |

---

This matter is before the Court for review of Magistrate Judge John Docherty's October 7, 2024 Report and Recommendation ("R&R"). The R&R recommends that Petitioner Antwain Euron Hill's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 be granted. R&R, ECF 20. The R&R further recommends that the United States Bureau of Prisons ("BOP") be ordered to extend to Mr. Hill the opportunity to obtain and apply earned time credits ("ETCs") under the First Step Act ("FSA"), Pub. L. 115-391 (2018), on 132 months of his 134-month sentence. *Id.* The Respondent objected to the R&R on November 4, 2024 (Objection, ECF 25), and briefing is now complete.[1]

Because Respondent timely objected to the R&R, the Court reviews the matter *de novo* and may "accept, reject, or modify the recommended disposition" or take other

---

[1] Mr. Hill filed a *pro se* Reply to Respondent's Objection on December 9, 2024. ECF 26. Later that same day, the Court appointed counsel for Mr. Hill and requested additional briefing in support of his habeas petition and in response to the objections. Counsel for Mr. Hill filed the requested brief on February 21, 2025. Pet'r's Resp., ECF 33. Respondent filed a reply brief on March 21, 2025. Reply, ECF 37. The Court appreciates counsel's very able representation of Mr. Hill in these proceedings.

appropriate action. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); D. Minn. LR 72.2(b)(3). For the reasons that follow, the Court respectfully declines to adopt the well-reasoned R&R in light of recent developments in the law. The Court recommits this matter to Magistrate Judge Docherty for further proceedings concerning the disallowance of FSA time credits Mr. Hill earned before he was sentenced on a disqualifying offense.

## BACKGROUND

*Facts*

Enacted in December 2018, the FSA created significant criminal justice reform aimed in part at reducing the number of inmates in federal prisons, preventing recidivism, and enhancing public safety. One of the FSA's reforms was the creation of a time-credit system that incentivizes eligible prisoners to participate in evidence-based recidivism reduction activities and programs. 18 U.S.C. § 3632(d)(4). Generally, eligible prisoners can earn credit to shorten their time in prison by completing coursework or engaging in other programming while they are confined in a BOP facility. Once their earned FSA credits equal the amount of time left on their sentences, the BOP applies those credits to their sentences, resulting in an earlier release from prison. *See, e.g.*, *Wanner v. Eischen*, No. 22-cv-1397 (JRT/JFD), 2023 WL 3483919, at *1–2 (D. Minn. Apr. 4, 2023) (discussing ETCs and their application toward time in prerelease custody or supervised release, instead of prison), *report and recommendation adopted by* No. 22-cv-1397 (JRT/JFD), 2023 WL 3480277 (D. Minn. May 16, 2023). However, "[i]nmates whose crime of conviction is on a long list of federal offenses set out at 18 U.S.C. § 3632(d)(4)(D) are not eligible to earn FSA time credits at all. . . ." *Id.*

2

In his habeas petition, Mr. Hill alleges that the BOP unlawfully determined that he cannot receive ETCs because he is serving a sentence for two convictions, one that is FSA eligible and the other that is not. In 2019, Mr. Hill received a 132-month sentence for conspiracy to possess with intent to distribute 50 or more grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(VIII), and 846. Apple Decl. ¶ 3 & Ex. A, ECF 11. A person convicted of this offense remains eligible to receive ETCs.

However, almost two years later, on December 21, 2021, Mr. Hill pled guilty to possession of contraband by an inmate in violation of 18 U.S.C. § 1791(a)(2) and (d)(1)(F). *Id.* ¶ 4 & Ex. B. The contraband at issue was his possession of a cell phone. For this § 1791 conviction, Mr. Hill received a 2-month sentence, which the district court ordered to run consecutively to the 132-month drug conspiracy sentence. Unlike his earlier (and much longer) 132-month sentence, the FSA provides that a person convicted under § 1791 is not eligible to receive ETCs. 18 U.S.C. § 3632(d)(4)(D)(xxix).

One might conclude that this combination of a lengthy FSA-eligible sentence and a much shorter FSA-ineligible sentence would mean that a person in Mr. Hill's position could still earn ETCs toward reducing his time in prison on the drug conviction even if he could not do the same for the § 1791 conviction. Indeed, such an approach seems entirely consistent with the purpose of the FSA. But that is not what happened here.

Years before the FSA's enactment, Congress provided that "[m]ultiple terms of imprisonment ordered to run consecutively or concurrently shall be treated for administrative purposes as a single, aggregate term of imprisonment." 18 U.S.C. § 3584(c). Applying this statute, the BOP aggregated both Mr. Hill's FSA-eligible 132-month

sentence for his drug conspiracy conviction and his FSA-ineligible 2-month sentence for the possession of a cell phone conviction into a single 134-month term of imprisonment. Apple Decl. ¶ 7; *id.* Ex. C. As a result, the BOP determined that Mr. Hill cannot earn ETCs that would reduce his 134-month aggregated sentence. *Id.* ¶¶ 8–9.

In May of 2023, the BOP calculated Mr. Hill's full-term expiration date as February 5, 2029, and it determined his projected release date, factoring in statutory good conduct time, is August 20, 2027. *Id.* Ex. C at 4. In short, because the BOP aggregated his two sentences into a single term of imprisonment and deemed the entire aggregated term ineligible for receipt of FSA time credits, Mr. Hill cannot use the evidence-based recidivism reduction activities or programs to obtain earlier release. In his habeas petition, Mr. Hill asserts that the BOP's calculation of his sentence violates both the FSA and 18 U.S.C. § 3584, and he argues that he should be eligible to receive FSA time credits toward reducing 132 months of his 134-month aggregated sentence.

### *The R&R*

The R&R concluded that Mr. Hill's habeas petition should be granted and that the BOP should be ordered to give Mr. Hill the opportunity apply ETCs on 132 months of his 134-month sentence. The R&R reached that conclusion based on application of statutory interpretation principles.

First, the R&R found that 18 U.S.C. § 3632(d)(4)(D)'s provision stating that "[a] prisoner is ineligible to receive time credits under this paragraph if the prisoner is serving a sentence for a conviction under [18 U.S.C. § 1791]" is "ambiguous when it is extended to the aggregation of sentences." R&R at 7. The R&R also determined that "the meaning

4

of 'administrative purpose' is ambiguous . . . in section 3584(c), particularly as applied to Section 3632(d)(4)(D)." *Id.* at 10.

Second, under the Supreme Court's recent decision in *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024), the R&R concluded that "the BOP's interpretation of Sections 3632(d)(4)(D) and 3584(c)—that Mr. Hill's sentences must be aggregated 'for administrative purposes' and thus his entire 134-month term of imprisonment is ineligible under the FSA—does not bind or limit this Court's independent judgement." *Id.* at 11–12. Consequently, the R&R "turn[ed] to standard tools of statutory interpretation."

Applying the tools of statutory interpretation, Judge Docherty found "the best reading of the statute . . . to be that Mr. Hill's 132-month sentence remains FSA-eligible and that this sentence is not transformed into an FSA-ineligible sentence by joining it with a two-month sentence for possession of contraband." *Id.* a 12. The R&R first emphasized that § 3632(d)(4)(D), which precedes the long list of FSA-ineligible sentences, refers to "serving a *sentence* for a *conviction*" using the singular, rather than a plural form. R&R at 12–14 (emphasis added). Thus, the R&R reasoned that § 3632(d)(4)(D)'s language contemplates only one conviction for one offense when indicating which convictions render an individual ineligible to receive FSA time credits and that such a reading is consistent with the FSA's purpose to ensure an opportunity for all prisoners to reduce the time spent in incarceration. *Id.* at 13–14.

Next, the R&R found that the BOP's interpretation violates the canon against absurd statutory constructions. *Id.* at 14–15. Specifically, the R&R explained:

5

> This Court finds the conclusion that the addition of an FSA-ineligible two-month sentence to an FSA-eligible 132 month sentence – sentence 66 times the length of the two month sentence – should result in the entire 134-month sentence being FSA-ineligible, is, in a word, absurd. The significant disproportion between a 132-month sentence and a two month sentence does serve to "shock the general . . . common sense." The use of the term "administrative purpose" should not be used to allow an FSA-ineligible two-month sentence to overwrite the bulk of the FSA-eligible sentence.
>
> This result also oversteps the BOP's ability to administer a sentence by running in direct opposition to Congress's intent in passing the FSA. . . . FSA was intended to provide a "meaningful opportunity" to "all prisoners" and the BOP's interpretation of Section 3584 directly prevents the realization of Congress's intent. The BOP's interpretation here is preventing Mr. Hill from a "meaningful opportunity" to reduce his sentence. The BOP's authority as an agency does not extend to contravening Congress. Therefore, the BOP's reading of Section 3584(c) should not be applied to Mr. Hill's sentences under Section 3236(d)(4) as it produces an absurd result and is in opposition to Congressional intent.

*Id.* at 15.

The R&R found misplaced the Respondent's reliance on earlier cases addressing this issue because they were decided based on deference to the BOP's interpretation under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), and *Loper Bright* overruled *Chevron*'s requirement that courts provide such deference to ambiguous statutes. *Id.* at 16–18. Finally, the R&R distinguished Mr. Hill's case from another case from this District that addressed a similar issue and reached the opposite conclusion—*Clinkenbeard v. King*, No. 23-3151 (JRT/LIB), 2024 WL 4355063 (D. Minn. Sept. 30, 2024). *Id.* at 18–19. Specifically, the R&R explained that unlike Mr. Hill, who received a much shorter FSA-ineligible contraband sentence at a different time and for

6

different conduct than his FSA-eligible narcotics conspiracy conviction, "Mr. Clinkenbeard's sentence was imposed by the same judge of the same court on the same day, in a single judgment," and his two aggregated sentences were much closer in duration than the two sentences aggregated for Mr. Hill. *Id.* at 18–19. The R&R reasoned that such "distinctions are so pronounced that this Court does not find itself obligated to follow *Clinkenbeard*" and that "rendering a 132-month sentence FSA-ineligible because of a temporally, factually, and geographically distinct two-month sentence violates the canon against absurdity." *Id.* at 19.

## DISCUSSION

### *Legal Standard*

A district court has the authority to grant a writ of habeas corpus to a prisoner when "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Petitions raising a challenge to the fact or duration of a prisoner's confinement "are the province of habeas corpus." *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (per curiam). And here, Mr. Hill claims that the duration of his confinement will necessarily be longer because of the BOP's allegedly erroneous interpretation of the relevant provisions of the FSA and 18 U.S.C. § 3584(c).

### *Aggregation and FSA Eligibility*

The parties agree that the issue in this case is one of statutory interpretation, and each side offers several reasons why its position is correct. Respondent argues that 18 U.S.C. § 3584(c) requires the BOP to aggregate Mr. Hill's sentences into a single term of imprisonment and determine whether the aggregated sentence is FSA-eligible regardless

7

of the FSA's silence on how to treat a prisoner with multiple convictions, when some are FSA eligible others are not. Respondent asserts: (1) that a Second Circuit decision issued after the R&R confirms the BOP's interpretation is correct; (2) that prior decisions from the Eighth Circuit and the District of Minnesota also are consistent with the BOP's approach; and (3) the R&R misapplied the canon against absurdity in interpreting the statute. Objection 4–13.

Mr. Hill argues that this Court should adopt the R&R for several reasons. Pet'r's Resp. 2. First, he contends that 18 U.S.C. § 3632(d)(4)(D) is ambiguous and several aspects of the statutory text support the R&R's interpretation as the better reading. *Id.* at 3–4. Second, Mr. Hill suggests that the Court should be skeptical of the BOP's interpretation in this case because Congress entrusted the Attorney General, rather than the BOP, with implementing programs under the FSA. *Id.* at 5–6. Third, he argues that the relevant legislative history of the FSA supports a reading of the statute that will lower costs, over-incarceration, and recidivism—all of which will be achieved by adopting the interpretation reflected in the R&R. *Id.* at 6–8. Fourth, he argues that § 3584's requirement that multiple sentences be aggregated for "administrative purposes" does not require the sentences to be aggregated for purposes of determining eligibility to earn time credits under the FSA. *Id.* at 8–13. Fifth, Mr. Hill contends that his interpretation of § 3632(d)(4)(D) is the better reading of the statute in light of the rule of lenity and the absurdity doctrine. *Id.* at 13–15. Finally, he notes that the Respondent points to no binding case that controls the issue before this Court and which favors the BOP's interpretation. *Id.* at 15–17.

Both the R&R's reasoning and Mr. Hill's arguments are persuasive. If the Court were writing on a truly blank slate, it would likely accept the R&R's recommended disposition and grant Mr. Hill's petition. Indeed, as the Respondent concedes, 18 U.S.C. § 3624(d)(4)(D) is ambiguous on the issue of whether a prisoner may receive FSA time credits when he is serving an aggregated sentence for one conviction that is eligible and for another conviction that is not. Moreover, it is far from plain to this Court that the BOP's obligation to aggregate multiple sentences for "administrative purposes" in 18 U.S.C. § 3584(c) necessarily includes determination whether a prisoner is eligible to receive FSA time credits. And interpretation reflected in the R&R and advocated by Mr. Hill best serves the FSA's overriding purposes. But developments that post-date the R&R restrict the Court's freedom to reach such a conclusion.

Just over two months after the Magistrate Judge issued the R&R in this case, the Eighth Circuit rejected an identical argument to that raised by Mr. Hill, albeit in an unpublished panel opinion. *Tyler v. Garrett*, No. 24-1147, 2024 WL 5205501 (8th Cir. Dec. 24, 2024) (per curiam). The facts of *Tyler* are remarkably similar to the facts of this case. Darryl Tyler was "serving a 30-year sentence on a 2005 conviction for racketeering and other offenses." *Id.* at *1. That offense is not on the disqualifying list under § 3632(d)(4)(D). Like Mr. Hill, while Tyler was serving his lengthy FSA-eligible sentence, he was convicted of "possessing a prohibited object in prison, in violation of 18 U.S.C.

9

§ 1791(a)(2)" in 2019 and again in 2021.[2] *Id.* The sentencing court ordered his shorter § 1791 sentences to run consecutively to the racketeering sentence. *Id.* "The BOP aggregated his sentences and determined he was ineligible to earn FSA credits based on his § 1791(a)(2) convictions." *Id.*

On appeal, Mr. Tyler argued he was "still serving his 2005 sentence, which does not disqualify him from earning FSA credits," so he should be allowed to receive ETCs to shorten that sentence, without affecting the time he spent in prison for his § 1791 convictions. *Id.* But the *Tyler* court disagreed. Conducting a de novo review and citing 18 U.S.C. § 3584(c), the *Tyler* court found that "the BOP correctly treated his prison terms as a single aggregated sentence for all 3 offenses, and therefore properly denied him eligibility for FSA credits." *Id.*

The conclusion reached by the *Tyler* court is consistent with an earlier unpublished panel opinion from the Eighth Circuit. *Sok v. Eischen*, No. 23-1025, 2023 WL 5282709, at *1 (8th Cir. Aug. 17, 2023) ("[W]e conclude that . . . the BOP correctly treated [the petitioner's] prison terms as a single aggregated sentence for all 3 offenses, and therefore properly denied him FSA credits."). It is also consistent with a recent Second Circuit decision, also issued shortly after the R&R in this case. *Giovinco v. Pullen*, 118 F.4th 527,

---

[2] Like Mr. Hill, Mr. Tyler's § 1791 convictions were for possession of a cell phone while he was incarcerated at a federal correctional facility. *See Tyler v. Garrett*, No. 2:23-cv-38-JM-JTR, 2023 WL 8244088, at *3 (E.D. Ark. Oct. 11, 2023) (explaining that Tyler's "two sentences for possessing a cell phone . . . are based on disqualifying offenses under the FSA"). Mr. Tyler's 2019 conviction for possession of a cell phone resulted in a consecutive sentence of two months' imprisonment, and his 2021 conviction for the same offense earned him an additional seven-month sentence to run consecutive to his longer racketeering sentence and concurrent with the previous cell phone sentence. *Id.* at *1.

10

529 (2d Cir. 2024) ("We conclude that, pursuant to the aggregation provision, a prisoner 'is serving a sentence for' any offense that is part of his aggregated term of imprisonment. Accordingly, the BOP must aggregate a prisoner's sentence pursuant to § 3584(c) for the purpose of determining his eligibility for FSA time credits under § 3632(d)(4).").

Admittedly *Tyler* is an unpublished decision.[3] However, it was issued after the R&R in this case, and the Magistrate Judge did not have the benefit of the *Tyler* decision in assessing the issues. Despite being unpublished, *Tyler* is directly on point. Moreover, the factual circumstances involved in that case are strikingly similar to those involved here—the initial FSA-eligible convictions landing both Mr. Tyler and Mr. Hill in federal prison resulted in far longer sentences than did their later, FSA-ineligible § 1791 convictions. Both here and in *Tyler*, the FSA-ineligible convictions were for possession of cell phones. As such, they both involved conduct that was temporally, factually, and geographically distinct from the longer sentences they were serving when they pled guilty to having contraband in prison. To disregard *Tyler* would ignore the writing on the wall. *See Reynolds v. Eischen*, No. 24-cv-2956 (LMP/DJF), ECF 16 at 13 (D. Minn. Mar. 11, 2025) ("Though

---

[3] The degree to which unpublished opinions are binding precedent in the Eighth Circuit is somewhat unclear. *Compare Anastasoff v. United States*, 223 F.3d 898 (8th Cir. 2000) (finding unpublished opinions are binding precedent and holding unconstitutional 8th Cir. R. 28A(i) to the extent it provides otherwise), *opinion vacated as moot on rehearing en banc*, 235 F.3d 1054 (8th Cir. 2000), *with United States v. Jordan*, 812 F.3d 1183, 1187 (8th Cir. 2016) ("[U]npublished opinions are not controlling precedent."), *and In re Baycol Prods. Litig.*, 214 F.R.D. 542, 543–44 (D. Minn. 2003) (same, citing 8th Cir. R. 28A(i)), *and* 8th Cir. R. 32.1A (stating that unpublished opinions "are not precedent"). It is also worth noting that the *Tyler* court, 2024 WL 5205501, at *1, affirmed the district court's denial of Mr. Tyler's habeas petition under 8th Cir. R. 47B, which provides that an order may be affirmed without an opinion if the appellate court finds that "an opinion would have no precedential value," and, as relevant here "no error of law appears." 8th Cir. R. 47B(4).

the Eighth Circuit has not yet issued a controlling decision on this question, *Tyler* suggests the court is likely to uphold the BOP's determination that multi-count sentences must be aggregated for purposes of FSA credit eligibility."); *Jones v. Eischen*, No. 24-cv-4658 (PJS/DJF), ECF 9 (D. Minn. Mar. 20, 2025) (same).[4] The Eighth Circuit does not consider multiple sentences aggregated into a single sentence to be separable for purposes of determining eligibility for FSA time credits. *See Tyler*, 2024 WL 5205501, at *1; *Sok*, 2023 WL 5282709, at *1; *see also Clinkenbeard v. Murdock*, No. 24-3127, slip op. (8th Cir. Mar. 27, 2025) (per curiam) (same).

While the analysis in *Tyler*, *Clinkenbeard*, and *Sok* is cursory, the Second Circuit's decision in *Giovinco* contains a more thorough discussion of the statutory interpretation underpinning its conclusion.[5] 118 F.4th at 531–33. The *Giovinco* court found that the "aggregation provision [in 18 U.S.C. § 3584(c)] establishes a background principle according to which multiple terms of imprisonment shall be treated for administrative purposes as a single, aggregate term of imprisonment." *Id.* at 531 (cleaned up). It then noted other areas in which the "administrative purposes" referred to in § 3584(c) applies to "other types of sentencing credits, such as time-served credits (§ 3585), good-time credits (§ 3624), and residential drug-abuse program credits (§ 3621)." *Id.* Given that background the

---

[4] Magistrate Judge Foster issued R&Rs in *Reynolds* and *Jones* that have not yet been reviewed by the respective District Judges.

[5] While Mr. Hill correctly notes that the *Sok* court affirmed a district court decision that relied on the deference accorded to reasonable agency interpretations under *Chevron*, *see* ECF 33 at 16, *Giovinco*, *Tyler*, and *Clinkenbeard* were decided after the Supreme Court overruled *Chevron* in *Loper Bright*. The *Giovinco* court's discussion makes clear that it applied no deference to the BOP's interpretation and reached its conclusion based on traditional rules of statutory interpretation. 114 F.4th at 531–33.

court "conclude[d] that the aggregation provision applies to the BOP's administration of the FSA time credit program," which the BOP administers, so "its implementation of § 3632(d)(4)(D) is an 'administrative purpose' for which multiple terms of imprisonment are to be treated as a single, aggregate term." *Id.* Although § 3632(d)(4)(D)'s key phrase—making a prisoner ineligible for ETCs if he "is serving a sentence for" a certain offenses—could be read to refer to sentences for individual convictions or to the aggregated term of imprisonment, the *Giovinco* court found that the latter reflected the best understanding of the statutory text. *Id.* at 531–32. Further, the court explained: "[i]f Congress intended to depart from the background principle set by the aggregation provision and to direct the BOP to apply the statutory criteria of § 3632(d)(4)(D) to each individual sentence, it could have expressed that intention either expressly or by fair implication in the FSA. . . . But it did not do so." *Id.* at 532 (internal quotations and citation omitted). Finally, the *Giovinco* court observed that its conclusion accorded "with every other circuit court to have considered the question." *Id.* at 533 n.4 (citing *Sok*, 2023 WL 528709, at *1; *Martinez v. Rosalez*, No. 23-50406, 2024 WL 140438, at *3 (5th Cir. Jan. 12, 2024); *Keeling v. Lemaster*, No. 22-6126, 2023 WL 9061914, at *1 (6th Cir. Nov. 22, 2023); and *Teed v. Warden Allenwood FCI Low*, No. 23-1181, 2023 WL 4556726, at *2 (3d Cir. July 17, 2023)).

It is also worth noting that the circuit court cases addressing the issue before this Court do not exclusively involve circumstances where petitioners received multiple sentences for FSA-eligible and FSA-ineligible offenses at the same time for related conduct. Among the cases are fact patterns more like Mr. Hill's case, where the petitioner

13

received a lengthy sentence on an FSA-eligible offense and then later received a sentence for an offense on § 3632(d)(4)(D)'s disqualifying list that involved different conduct committed at a different. *Compare Tyler*, 2024 WL 5205501, at *1 (FSA-eligible sentence first, ineligible sentence later on distinct conduct), *and Teed*, 2023 WL 4556726, at *1 (same), *and Martinez*, 2024 WL 140438, at *1 & n.1 (FSA-ineligible sentence first, FSA-eligible sentences later), *with Giovinco*, 118 F.4th at 528 (FSA-eligible and FSA-ineligible sentences imposed at the same time), *and Sok*, 2023 WL 52870, at *1 (same), *and Keeling*, 2023 WL 9061914, at *1 (same). But even these different fact patters have not affected the uniformity of the circuit courts' conclusions. They have found that the BOP must aggregate multiple terms of imprisonment for administrative purposes under 18 U.S.C. § 3584(c), and when administering an aggregated sentence for purposes of determining an inmate's eligibility to receive FSA time credits, if the aggregated term of imprisonment includes any sentence on a disqualifying conviction under 18 U.S.C. § 3632(d)(4)(D), that inmate is ineligible to receive those credits.

Given the clear and recent indication from the Eighth Circuit and its consistency with the weight of the case law, this Court respectfully declines to adopt the R&R's recommendation that Mr. Hill's petition be granted and the BOP be ordered to extend to Mr. Hill the opportunity to earn time credits on 132 months of his 134-month sentence.

### *Previously Earned Time Credits*

Although the Court concludes that Mr. Hill is not eligible to earn ETCs after the BOP's aggregation of his sentence under § 3584(c), there remains an open question about what must be done with any ETCs he accumulated before he received his two-month

14

disqualifying sentence. Whether Mr. Hill is entitled to receive those FSA time credits and have them applied to reduce his aggregated sentence is unanswered by the parties' briefing. Indeed, the *Tyler* decision concludes with the observation that there was "no indication in the record that Tyler had earned any FSA credits prior to the imposition of his disqualifying sentences." 2024 WL 5205501, at *1. As explained below, the same is not true in this case, and it seems unlikely that the *Tyler* court would have pointed out the absence of such evidence unless it was leaving open the issue of an inmate's entitlement to receiving FSA time credits earned before imposition of a disqualifying sentence. After all, the FSA expressly states that "[t]ime credits *earned* under this paragraph by prisoners who successfully participate in recidivism reduction programs or productive activities *shall be applied* toward time in prerelease custody or supervised release." 18 U.S.C. § 3632(d)(4)(C) (emphasis added).

The record in this case suggests that Mr. Hill may have earned a substantial backlog of ETCs before he received his § 1791 sentence. After Mr. Hill was sentenced in 2019 on his drug-conspiracy conviction, the BOP conducted the required FSA Risk Assessment for Mr. Hill and determined that he was at a medium risk of recidivism, which it later adjusted to low. *See* ECF 1-2 at 1; *see* ECF 11-4 (Ex. D to Decl. of Matthew Apple). In his Petition, Mr. Hill alleged that he began earning ETCs right after he began serving his lengthy sentence for the 2019 conviction, and he argued that the BOP violated federal law when it took away those time credits after he was sentenced for the offense of possessing a cell

15

phone in prison.[6] And the evidence submitted by the Respondent appears to confirm that Mr. Hill participated in an array of evidence based recidivism reduction programming and activities before the BOP updated his First Step Act Inmate History report to reflect that he is "FTC-Ineligible." Apple Decl., Ex. D. However, based on the available information, this Court cannot discern how many ETCs Mr. Hill earned during that interim period and how many of those credits the BOP later revoked (though presumably the BOP revoked them all based on its aggregation decision).

Moreover, none of the circuit court decisions identified by the parties or by this Court have specifically addressed whether the BOP can revoke ETCs that an inmate has already earned before he receives a sentence on an FSA disqualifying offense. There may be strong arguments on either side, but that issue is presently undeveloped in this case. As noted, Mr. Hill claimed it was unlawful for the BOP to take away the FSA time credits he earned prior to the imposition of his two-month contraband sentence.

Accordingly, while the Court respectfully declines to adopt the recommendation that Mr. Hill's petition be granted, it also finds that denial of the petition at this time would be unjust. Instead, the Court recommits this matter to the Magistrate Judge for further proceedings to address this issue. *See* 28 U.S.C. § 636(b)(1) (providing that in addition to

---

[6] *See* ECF 1-2 at 3 ("[P]rior to Hill receiving a charge for violating prison rules [under § 1791], Hill was earning FTC's."); ECF 1-2 at 6 (distinguishing between ETCs previously earned and eligibility to earn ETCs going forward); ECF 3 at 3 (arguing that an inmate should not be "unduly punished by having previously earned time credits/reduction in sentence taken away because of a subsequent charge" and requesting that the court "award him the time credits that he has already earned"); ECF 3 at 4 ("Movant further contends that the BOP could not take away the credits he previously earned from the time he was committed into BOP custody (July 16, 2019) up to the time he received a 2nd sentence (December 12, 2021).").

16

accepting, rejecting, or modifying the findings and recommendations in an R&R, a district judge may "recommit the matter to the magistrate judge with instructions").

## ORDER

Accordingly, **IT IS HEREBY ORDERED THAT** the Court respectfully declines to adopt the R&R and recommits the matter to the Magistrate Judge pursuant to 28 U.S.C. § 636(b) for further proceedings as outlined in this decision.

Date: April 7, 2025

*s/Katherine Menendez*
Katherine Menendez
United States District Judge